**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No.:

**MARISOL ENRIQUEZ,**

**Plaintiff,**

**v.**

**ADAMS COUNTY SCHOOL DISTRICT NO. 14, ADAMS COUNTY SCHOOL
DISTRICT NO. 14 BOARD OF EDUCATION, and PATRICK SANCHEZ and JACK
KRONSER, Individually and in their official capacity,**

**Defendants,**

---

**COMPLAINT AND JURY DEMAND**

---

**INTRODUCTION**

1.   This action is brought to redress injuries sustained by Plaintiff Marisol Enriquez ("Dr.
Enriquez" or "Plaintiff") as a result of Defendants' acts, specifically violating Plaintiff's right to
freedom of association, freedom of speech and equal protection as guaranteed under the First
Amendment and Fourteenth Amendment of the United States Constitution and Art. II, §§ 3 and
10 of the Colorado Constitution as enforced through the Civil Rights Act of 1871, 42 U.S.C. §§
1983, for which she requests damages, declaratory and injunctive relief.

2.   Plaintiff also brings this action to redress injuries sustained as a result of Defendants'
discriminatory, retaliatory and aiding and abetting acts in violation of Title VII of the Civil
Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000e et seq., and in violation of the
Colorado Anti-Discrimination Act ("CADA"), § 24-34-402, et seq., as amended.

## FACTS RELEVANT TO JURISDICTION AND VENUE

3.   This is an action for damages arising under 42 U.S.C. § 1983, Title VII, and various state statutory law claims.

4.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343.  The Court has pendant jurisdiction over the state claims.

5.   All unlawful actions complained of herein occurred within the jurisdiction of the United States District Court for the District of Colorado.  Venue of this Court is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6.   Dr. Enriquez is a United States citizen and Colorado resident.  Dr. Enriquez is a Hispanic female.  At all times relevant to this civil action Dr. Enriquez was the Director of Human Resources for Adams County School District No. 14.

7.   Adams County School District No. 14 (the "District"), at all times relevant to this civil action, is a public school district organized under the laws of the State of Colorado and is a "person" as that term is defined by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and CADA. At all times relevant to this civil action, the District is an "employer" as that term is defined by Title VII and CADA.   At all times relevant to this civil action, the District was the employer of Dr. Enriquez.  At all times relevant to this civil action, the District, by and through its agents and/or employees, was operating under the color of law when it began an investigation into Dr. Enriquez, refused to conduct an investigation into Dr. Enriquez's discrimination and retaliation complaints, terminated her employment by refusing to renew her employment contract because of her association with Dr. Robyn Mondragon, and retaliated against Dr. Enriquez because of her

opposition to discriminatory and retaliatory practices.  The District is located at 5291 E. 60th Avenue, Commerce City, Colorado.

8.      Adams County School District No. 14 Board of Education (the "Board"), at all times relevant to this civil action, is a Colorado public school district board of education organized under the laws of the state of Colorado and is a "person" as that term is defined by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and CADA.  At all times relevant to this civil action, the Board is an "employer" as that term is defined by Title VII and CADA.  The Board approved the contract for Dr. Enriquez.  Defendant Board acted under the color of law when it took discriminatory and retaliatory action against Dr. Enriquez through its decision and policy making processes.  The Board is located at 5291 E. 60th Avenue, Commerce City, Colorado.

9.      Defendant Patrick Sanchez ("Defendant Sanchez"), at all times relevant to this civil action, was the Superintendent of the District and a citizen of the State of Colorado.  Defendant Sanchez is a "person" as that term is defined by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and CADA.  At all times relevant to this civil action, Defendant Sanchez was operating under the color of law when Dr. Enriquez's complaints of discrimination, retaliation and allegations that Defendants were violating federal law were not investigated by Defendants, and when Defendant Sanchez made the recommendation to Defendant Board not to renew Dr. Enriquez's employment contract, after consultation with Defendant Kronser, because of her complaints of discrimination and retaliation and because of Dr. Enriquez's association with Dr. Robyn Mondragon.

10.     Defendant Jack Kronser ("Defendant Kronser"), at all times relevant to this civil action, was the Chief Human Resources Officer of the District and a citizen of the State of Colorado.  Defendant Kronser is a "person" as that term is defined by the Civil Rights Act of 1871, 42

U.S.C. § 1983, and CADA.  At all times relevant to this civil action, Defendant Kronser was operating under the color of law when Dr. Enriquez's complaints of discrimination, retaliation and allegations that Defendants were violating federal law were not investigated by Defendants, and when Defendant Kronser, working with Defendant Sanchez, made the recommendation to Defendant Board to not renew Dr. Enriquez's employment contract because of her complaints of discrimination and retaliation and because of Dr. Enriquez's association with Dr. Robyn Mondragon.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     On April 27, 2016, and May 17, 2016, Dr. Enriquez requested from the Colorado Civil Rights Division and Equal Employment Opportunity Commission letters for right to sue involving her claims of employment discrimination, retaliation and aiding and abetting.  On June 1, 2016, the Colorado Civil Rights Division issued Notices of Right to Sue for each of the cases against Defendants.  Dr. Enriquez is still waiting for the Notices of Right to Sue from the Equal Employment Opportunity Commission.

## STATEMENT OF FACTS

**A.  Federal Government's Findings of Discrimination and Retaliation Against the District and Board**

12.     On April 25, 2014, the public was alerted to findings from the United States Department of Education, Office for Civil Rights ("OCR"), against the District and the Board based on a multiyear investigation into discriminatory and retaliatory education and employment practices involving Hispanic families, students and staff.  The OCR findings were highly publicized by the press and raised questions about the educational and employment practices of a school district that is majority Hispanic – nearly 83 percent Hispanic student population.

13.     In the 24-page report, OCR found that the District and the Board engaged in discriminatory education and employment practices, including creating a hostile work environment and engaging in retaliatory behavior against Latino parents, students and staff. OCR also found that the District and the Board failed to investigate complaints of discrimination. The report noted that Defendant Sanchez agreed to remedy the District's discriminatory and retaliatory practices.

14.     Prior to the April 25, 2014 OCR report being publicly released, on February 11, 2014, Defendant Sanchez entered into an Agreement with OCR.  In very clear terms, Defendant Sanchez and the District agreed to the following:

> *To this end, the District will promptly investigate all incidents of harassment of parents, students, and staff on the basis of race, color, or national origin that are known or reasonably should be known to the District and will take appropriate action to respond to complaints, which may include disciplinary action against students, staff and/or administrators found to have violated District Policies AC, JB, AC-R1, and AC-R2 (Policy).  The District will take prompt, effective, action reasonably designed to end any hostile environment, prevent its recurrence, and, where appropriate, take steps to remedy the effects of the hostile environment on affected staff and students.*

15.     The Agreement details the District's responsibilities in implementing the Agreement. Specifically, the District, among other things, was required to:

- Hire a new Grievance Officer;

- Create a central database to track complaints of discrimination; and

- Renew its antidiscrimination, anti-harassment policies;

16.     The District agreed to prohibit "retaliation against persons who report alleged harassment or participate in related proceedings."

17.    By agreement, the District is required to investigate all formal and informal complaints of harassment.

18.    OCR's findings and subsequent settlement agreement were widely reported by the media and served as a black eye on the District, the Board and its administrators.  See, http://www.denverpost.com/news/ci_25663484/report-latino-students-staff-faced-hostile-environment-at.

19.    As part of rectifying the problems associated with its discriminatory and retaliatory education and employment practices, the District hired Dr. Enriquez.

**B.  <u>Mandated Changes in the District Leads to Dr. Enriquez's Hire</u>**

20.    Dr. Enriquez was recruited to apply for the Director of Human Resources position with the District in July 2014 by then-Chief Human Resources Officer Leon Cerna ("Cerna").  Prior to her application, Dr. Enriquez served as the Pathways Director for the Aurora Public Schools District.

21.    Dr. Enriquez was offered the position and signed a contract with the District.  The contract would end on June 30, 2015.

22.    Upon Dr. Enriquez's hire with the District, she was placed in the position of Director of Human Resources.  As part of her job responsibilities, she was required to investigate discrimination and retaliation complaints received from staff, parents and students within the District.  Dr. Enriquez's position was in line with the OCR Agreement requirements.

**C.  <u>Dr. Enriquez's Relationship to Dr. Robyn Mondragon</u>**

23.     At the time Dr. Enriquez was hired by Defendants, Dr. Robyn Mondragon ("Dr. Mondragon") also was hired by Defendants in the position of Chief Academic and Equity Officer.

24.     Defendants were always aware that Dr. Enriquez and Dr. Mondragon have had a deep personal relationship for over 20 years.  Dr. Enriquez is the *madrina* (godmother) to one of Dr. Mondragon's sons, which is a deeply religious and familial commitment in the Hispanic community.  Dr. Enriquez and Dr. Mondragon also are sorority sisters in Colorado's first Latina sorority, Lambda Theta Nu.

25.     Information about Dr. Enriquez's and Dr. Mondragon's association was well known throughout the District, was shared with District officials at Courageous Conversations Equity trainings offered by the District and shared during numerous other conversations with Defendants.

###    D. November 12, 2014, Twenty-One Discrimination Complaints and Dr. Mondragon's Investigation

26.     On November 12, 2014, twenty-one letters were submitted to the Board alleging discrimination based on race and/or primary language resulting in disparate treatment directed toward Hispanic/Latino/Spanish speaking parents and staff at Rose Hill Elementary School.

27.     These new complaints again raised concerns about the discriminatory and heavy-handed treatment of Hispanic parents, students and staff by District administrators, including Rose Hill Elementary Principal Sherry Segura ("Principal Segura") and Defendant Sanchez's administration.

28.     OCR's April 25, 2014 findings specifically mentioned investigating administrators from Rose Hill Elementary School for discrimination and retaliation.

29.     Pursuant to the OCR Agreement, the District was obligated to promptly investigate the parent complaints.  The Agreement mandates that no student, employee or member of the public will be subjected to adverse treatment in retaliation for any report of harassment.  The Board assigned the investigation of the complaints to Dr. Mondragon.

30.     Dr. Mondragon undertook an extensive two-month investigation into the complaints, which involved numerous witness interviews and a review of documentation.

31.     After conducting her investigation, Dr. Mondragon concluded that school administrators: 1) engaged in creating an atmosphere of distrust and conflict; and 2) implemented disproportionate measures against particular parents, fracturing parent-to-parent and parent-to-administrator relations.  Dr. Mondragon made recommendations to resolve the situation and to restore trust between the community and the District.

32.     The final report was written on January 30, 2015.

33.     Defendant Sanchez received a copy of the final report.

34.     Dr. Mondragon was to have reported her findings to the Board, but she was stripped of her duties and terminated from employment before she could make the presentation.

35.     It is unknown whether Dr. Mondragon's findings have been reported to the Board.

36.     On February 6, 2015, Defendant Sanchez, whose administration was considered to be alleged discriminating officials by the parents, inappropriately contacted Dr. Mondragon and asked her to change her findings.

37.     Dr. Mondragon considered this conduct wholly inappropriate and a violation of the OCR Agreement since Defendant Sanchez's administration was being questioned.

38.     Defendant Sanchez's attempt to interfere in the investigation also violated the OCR Agreement requiring that an investigation be reliable and impartial.

39.     Dr. Mondragon, who was out-of-town on business at the time Defendant Sanchez called, refused to change her findings.

40.     Later that day, Dr. Mondragon's assistant, Barb Heumann, contacted Dr. Mondragon to report that Defendant Sanchez inappropriately accessed Dr. Mondragon's computer files to make edits to the final report.

41.     Dr. Mondragon confronted Defendant Sanchez and objected to his actions.

42.     A Colorado Open Records Act request reveals that after Dr. Mondragon's January 30, 2015 final report, Defendant Sanchez began an investigation against Dr. Mondragon without her knowledge.

43.     Prior to Dr. Mondragon's January 30, 2015 final report, there was no investigation being conducted against Dr. Mondragon by Defendants Board, District or Defendant Sanchez.

44.     Because of the adverse treatment Dr. Mondragon began experiencing from Defendants, she filed an internal discrimination and retaliation complaint against Defendants.

45.     Despite the OCR Agreement, Dr. Mondragon's complaint was not investigated.

46.     Dr. Mondragon's employment was terminated by Defendants Board, District and Sanchez on May 27, 2015, with an official termination letter provided to her on June 4, 2015.

**E.   Dr. Enriquez's Complaints of Discrimination**

47.     At the time Defendants were moving against Dr. Mondragon, Dr. Enriquez also began experiencing problems with District administration.  Prior to January 30, 2015, Dr. Enriquez had not experienced any criticism or been told of any concerns related to her job performance.

48.     In April 2015, Sandy Rotella, Chief Financial Officer for Defendants, began harassing Dr. Enriquez regarding travel related to recruitment.  Part of Dr. Enriquez's job was to travel to recruit teachers and other personnel to the District.

49.     Dr. Enriquez's travel schedule had been approved, in advance, by Cerna.

50.     Prior to April 2015, Defendant Kronser, as Dr. Enriquez's supervisor, did not raise any concerns about Dr. Enriquez's travel.

51.     After several other increasingly hostile emails received from Rotella, on April 14, 2015, Dr. Enriquez issued a formal complaint to Defendant Kronser alleging harassment and a hostile work environment being created by Rotella on the basis of Dr. Enriquez's national origin, Hispanic.  Other non-Hispanic employees were not being harassed about their travel schedule or being treated in the same hostile manner by Rotella as Dr. Enriquez.

52.     Under the OCR Agreement, Defendants were under the obligation to conduct an investigation into Dr. Enriquez's complaints.  To date, no investigation has been done.

53.     On May 14, 2015, Dr. Enriquez sent an email to Defendant Kronser alerting him to concerns that Defendant District and Board were out of compliance with federal law and out of compliance with the OCR Agreement.  Dr. Enriquez stated the following:

> Hello Jack and Kandy,
>
> Happy Tuesday!  When I started in the district I was part of a meeting with Virginia relative to OCR.  At that time we started to look into which teachers were qualified to teach English Learners in their English Language Development block.
>
> Lina went out of her way to meet with teachers and continue to compile the information in the attached spreadsheet.
>
> Please see the attached list of ELD teachers who are not qualified to teach English Language Learners.  It would be in the District's best interest to

*try to come up with a plan to get these teachers qualified to teach so that*
*we are in compliance.  Please let me know how you want to proceed.*

54.     Dr. Enriquez attached a voluminous list of teachers who were not qualified to teach

English Language Learners.

55.     Again, to date, Dr. Enriquez's concerns have not been investigated despite the OCR

Agreement.

56.     On June 3, 2015, Defendant Kronser met with Dr. Enriquez.  During the meeting,

Defendant Kronser advised Dr. Enriquez that she should terminate her employment "sooner

rather than later."

57.     Despite her utter shock to Defendant Kronser's statement, she refused to quit her job.  At

that point, Defendant Kronser then began to make false accusations about Dr. Enriquez and her

employment and questioned Dr. Enriquez's judgment.

58.     As an example, Defendant Kronser mentioned an attachment to a text message Dr.

Enriquez sent to Dr. Mondragon on or about May 27, 2015 alerting Dr. Mondragon that

Defendant Board formally voted to terminate Dr. Mondragon's employment.

59.     What particularly disturbed Dr. Enriquez was that Defendants were tracking her text

messages or email messages to and from Dr. Mondragon.

60.     The attachment Dr. Enriquez sent was a public record, the vote by Defendant Board was

a public record and Dr. Enriquez was within her right as the Director of Human Resources to

forward Defendant Board's personnel decision to Dr. Mondragon.

61.     Defendant Kronser then indicated that Dr. Enriquez's employment would be terminated

and her contract was not going to be renewed because of her close relationship with Dr.

Mondragon.

62.     At the time of the June 3, 2015 conversation, Defendants were aware of Dr. Mondragon's internal complaints of discrimination and retaliation.

63.     Defendant Kronser then criticized Dr. Enriquez's handling of other matters that were never a concern until after Dr. Enriquez raised concerns about discrimination and Defendants' lack of compliance with the OCR Agreement.

64.     Dr. Enriquez expressly objected to Defendant Kronser's allegation and noted that Defendant Kronser was a direct participant in the systemic discrimination suffered by Adams 14 staff.

65.     As an example, Dr. Enriquez noted that Latino families raised discrimination complaints against Amy Burns, former principal at Central Elementary School.  Dr. Enriquez was assigned the investigation of the complaints.  She discovered that then-Principal Burns treated Latino families unfairly.  Dr. Enriquez also learned of a new allegation from Claudia Jimenez against then-Principal Burns.

66.     Dr. Enriquez pointed out that as evidence of discrimination became available against then-Principal Burns, Defendant Kronser took the investigation away from Dr. Enriquez.

67.     Despite Dr. Enriquez's recommendation that then-Principal Burns not be allowed back into Central Elementary School because of fear expressed by Ms. Jimenez, Defendant Kronser allowed then-Principal Burns to return to the school.

68.     Dr. Enriquez also noted that when complaints were issued against the principal of Adams City Middle School, Defendant Kronser took those investigations away from Dr. Enriquez because "the principal was on the teacher negotiations team."

69.     Dr. Enriquez further objected to Defendant Kronser about the way the District was handling employee complaints.  She told Defendant Kronser that employee relations were handled based on "who is in favor and who has the ear of the superintendent, deputy superintendent and legal counsel and not on what is best for students, parents or stakeholders of our community."

70.     Dr. Enriquez again expressed that she was being discriminated against and retaliated against for her complaints of discrimination.

71.     Dr. Enriquez not only expressed her statements to Defendant Kronser verbally on June 3, 2015, but she memorialized their conversation in a June 15, 2015 email.

72.     On June 30, 2015, Defendants terminated Dr. Enriquez by failing to renew her contract.

**F.  Defendants' Actions After Dr. Enriquez's Nonrenewal**

73.     On July 1, 2015, Dr. Enriquez started a new job with Denver Public School District ("DPS") as a principal.

74.     After she started working for DPS, Dr. Enriquez was advised by DPS officials that Sanchez advised them that he was going to have Dr. Enriquez's principal's license revoked by the state.

75.     In an attempt to harass and retaliate against Dr. Enriquez, Defendant District then began filing Colorado Open Records Act ("CORA") requests with DPS regarding Dr. Enriquez.  The first CORA was filed on September 17, 2015.

76.     Defendants filed a second CORA request with DPS on October 1, 2015.

77.     On or about April 17, 2016, Dr. Enriquez was invited to meet with former Adams County 14 School Board Member Larry Quintana.  Mr. Quintana was a school board member until

November 2015.  Mr. Quintana expressed to Dr. Enriquez that he wanted to meet with her to discuss what he knew about Defendants' conduct toward her and Dr. Mondragon.

78.     During the meeting, Mr. Quintana advised Dr. Enriquez that he found a $7 million discrepancy in the District's finances under Defendant Sanchez.  He stated that he called for an investigation into the finances and a comprehensive audit.

79.     Mr. Quintana also advised Dr. Enriquez that Defendant Sanchez was under investigation for his human resources practices.

80.     Mr. Quintana expressly stated that "[T]he thing that is really bothering the board is that 90 percent of the people that he gets rid of are women.  He forces them out."

81.     Mr. Quintana also expressed that, "[A]fter this is over and we know where we are at, I do want to reach out to Dr. Duran (Dr. Mondragon).  I think they did her a real injustice and that is all I am going to say."

82.     On May 2, 2016, OCR issued another letter to the District regarding its failure to investigate complaints of discrimination.

83.     The District has not conducted an investigation into Dr. Enriquez's April 14, 2015, and June 15, 2015 complaints of discrimination.

84.     OCR stated in its letter to the District that it is aware of national origin, race, and color allegations involving "the highest level of the District, including current and past members of the Board of Education that have not been investigated."

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 Denial of Equal Protection – All Defendants)

85.     Dr. Enriquez incorporates the preceding paragraphs as if fully set forth herein.

86.     Defendants acted under the color of state law, pursuant to a policy, custom or practice of

Defendant District and Board, to deprive Dr. Enriquez the equal protection of the law, as

guaranteed under the United States Constitution and Colorado Constitution, when they began an

investigation on Dr. Enriquez in retaliation for her complaints of discrimination and retaliation,

refused to investigate her claims of employment discrimination and retaliation, refused to

investigate her claims that Defendants were violating federal law with respect to uncertified

teachers and when they refused to renew her contract.

87.     The deprivation was based on Dr.  Enriquez's national origin, Hispanic, sex, female and

in retaliation for her complaints of discrimination.

88.     Dr. Enriquez was subjected to adverse treatment because of her national origin and sex,

including but not limited to being unlawfully disciplined, being unlawfully investigated and

having her contract non-renewed.

89.     Dr. Enriquez engaged in activities and speech in opposition to discriminatory and

retaliatory employment practices prohibited by the Equal Protection Clause of the Fourteen

Amendment to the United States Constitution.

90.     Defendants have been found by OCR to have engaged in a pattern and/or practice of

national origin discrimination against Hispanic parents, students and staff and found to have

engaged in a pattern and/or practice of retaliation against anyone who complains of Defendants'

discriminatory and retaliatory practices.

91.     Defendants are not entitled to qualified immunity as the law, the publicly known OCR

findings and the publicly known OCR Agreement clearly established Dr. Enriquez's statutory

and constitutional rights to be free from discrimination, retaliation, , and she was entitled to the benefit of having her complaints of discrimination and retaliation investigated.

92.    Dr. Enriquez spoke out on behalf of parents, students, staff and herself because she had a reasonable and good faith belief that Defendants were continuing their proven practice of discrimination and retaliation as detailed by the OCR.

93.    Defendants treated Dr. Enriquez more adversely than her similarly situated counterparts who engaged in the same or similar behavior for which Dr. Enriquez was accused.

94.    Defendants failed to properly monitor, train, supervise and/or discipline members of their Board and employees regarding anti-discrimination laws.  This inadequate monitoring, training, and/or supervision results from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendants.  Such failure to properly hire, train, and/or supervise was the moving force behind and proximate cause of Defendants' discrimination and retaliation against Dr. Enriquez and constitutes an unconstitutional policy, procedure, custom and/or practice.

95.    Defendants are deliberately indifferent to or tacitly approved of their Board members and employees' misconduct, which is performed through official custom, policy, or practice promulgated by the Board and decisionmakers, and that custom, policy, or practice was the moving force behind Defendants' unconstitutional acts.

96.    Defendants' acts were deliberate or in reckless disregard of Dr. Enriquez's constitutional and statutory rights and demonstrate an invidiously discriminatory and/or retaliatory animus as the motivating factor behind Defendants' actions.

97.     As a proximate result of Defendants' violation, Dr. Enriquez suffered and continues to suffer injuries, damages and losses.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 Freedom of Association – All Defendants)

98.     Dr. Enriquez incorporates the preceding paragraphs as if fully set forth herein.

99.     Dr. Enriquez has a deeply religious, familial and decades long relationship with Dr. Mondragon.

100.    Defendants were aware of Dr. Enriquez's and Dr. Mondragon's personal relationship.

101.    Defendants also were aware of Dr. Mondragon's findings against Defendants related to her investigation of discrimination and retaliation complaints filed by Hispanic parents.

102.    Defendants were aware of Dr. Mondragon's internal complaints of discrimination and retaliation she suffered at the hands of Defendants.

103.    Defendants expressly stated that Dr. Enriquez's employment contract would not be renewed because of her close association with Dr. Mondragon.

104.    Defendants acted under the color of state law, pursuant to a policy, custom or practice of Defendant District and Board to deprive Dr. Enriquez the right to associate with Dr. Mondragon and when it terminated her employment by failing to renew her employment contract because of Dr. Enriquez's association with Dr. Mondragon;

105.    Defendants are deliberately indifferent to or tacitly approved of their Board members and employees' misconduct, which is performed through official custom, policy, or practice promulgated by the Board and decision makers, and that custom, policy, or practice was the moving force behind Defendants' unconstitutional acts.

106.    Their overt acts caused and continue to cause harm to Dr. Enriquez for which she suffers injuries, damages and losses.

### THIRD CAUSE OF ACTION
**(42 U.S.C. § 1983 Retaliation for Freedom of Speech – All Defendants)**

107.    Dr. Enriquez incorporates the preceding paragraphs as if fully set forth herein.

108.    As a matter of public concern, Dr. Enriquez complained that Defendants were violating the OCR Agreement and federal law with respect to the District's lack of qualified teachers to teach English Language Learner students.

109.    Dr. Enriquez advised Defendants to come up with a plan to get the teachers qualified.

110.    Defendants previously were found to have discriminated against Spanish-speaking students.

111.    Defendants were under an OCR Agreement to cease any further discriminatory or retaliatory acts against Spanish-speaking students.

112.    Dr. Enriquez's complaint about the lack of qualified teachers to teach English Language Learners is a matter of public concern.

113.    Defendants failed to investigate Dr. Enriquez's complaint.

114.    As a result of the OCR Agreement, Defendants did not have the right to place any restriction or to retaliate against Dr. Enriquez's speech.

115.    Defendants' actions did not promote the efficiency of public service and did not outweigh Dr. Enriquez's free speech interests.

116.    Dr. Enriquez's protected speech is a motivating factor in those actions Defendants took against her.

117.    As Dr. Enriquez was not under investigation prior to her April 14, 2015 and June 3, 2015

complaints, Defendants cannot show that they would have taken the same action against Dr.

Enriquez absent her protected speech.

118.    As a proximate result of Defendants' violation, Dr. Enriquez suffered and continues to

suffer injuries, damages and losses.

### FOURTH CAUSE OF ACTION
#### (National Origin, Ancestry and Sex Discrimination Under Title VII and CADA – Defendants Board and District)

119.    Dr. Enriquez incorporates the preceding paragraphs as if fully set forth herein.

120.    Dr. Enriquez belongs to a protected group based on her national origin/ancestry,

Hispanic, and sex, female.

121.    Dr. Enriquez was qualified for her position.

122.    Dr. Enriquez suffered an adverse employment action.

123.    The circumstances of the adverse employment actions suffered give rise to an inference

of unlawful discrimination.

124.    As a proximate result of Defendants' violation, Dr. Enriquez suffered and continues to

suffer injuries, damages and losses.

### FIFTH CAUSE OF ACTION
#### (Retaliation Under Title VII and CADA – Defendants Board, District and Kronser)

125.    Dr. Enriquez incorporates the preceding paragraphs as if fully set forth herein.

126.    Dr. Enriquez participated opposed Defendants' discriminatory practices on April 14,

2015, June 3, 2015 (orally) and June 15, 2015 (written).

127.    Defendants began an investigation into Dr. Enriquez after her complaints of discrimination, failed/refused to investigate her discrimination and retaliation complaints, and terminated her employment and non-renewed her contract on June 30, 2015.

128.    There exists a causal connection between Dr. Enriquez's complaints of discrimination and retaliation, which went uninvestigated, and the adverse employment actions taken against her by Defendants.

129.    As a proximate result of Defendants' violation, Dr. Enriquez suffered and continues to suffer injuries, damages and losses.

### SIXTH CAUSE OF ACTION
**(Aiding and Abetting Discrimination in Violation of CADA – Defendant Kronser)**

130.    Dr. Enriquez incorporates the preceding paragraphs as if fully set forth herein.

131.    By and through the conduct of Defendant Kronser, Defendants District and Board were assisted in engaging in discriminatory and retaliatory acts against Dr. Enriquez, leading to her termination from employment and non-renewal of her employment contract.

132.    As a proximate result of Defendants' violation, Dr. Enriquez suffered and continues to suffer injuries, damages and losses.

WHEREFORE, Dr. Enriquez respectfully prays this Court to grant the following relief:

a)   Declaratory relief and injunctive relief, as appropriate;

b)   Actual economic damages as established at trial;

c)   Any economic losses or injuries that Dr. Enriquez suffered to the present time or which Dr. Enriquez will probably suffer in the future, including but not limited to loss of earnings or damage to her ability to earn money in the future, and other expenses;

d)   Compensatory, consequential, nominal and special damages past, present and future, in amounts to be proven at trial, including mental pain and suffering, inconvenience, emotional stress, impairment of the quality of life, humiliation and embarrassment, injury to reputation, economic and non-economic losses, financial hardship, loss of earning capacity, and all other damages as provided by law or equity;

e)   Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f)   Pre-judgment and post-judgment interest at the highest lawful rate;

g)   Attorney's fees and costs in this action; and

h)   Such other and further relief as allowed by law or in equity.

Respectfully submitted this **16**th day of **August**, 2016.

Joseph A. Salazar, Esq.
Smith Shellenberger & Salazar, LLC
14694 Orchard Parkway, Suite 210
Westminster, Colorado 80023
(303) 255-3588 Office
(303) 255-3677 Fax
E-mail: jas@ssslawyers.com
Atty. Reg. #35196

## **JURY DEMAND**

Dr. Enriquez requests a trial by jury on all issues and claims.

Address of Plaintiff:

Dr. Marisol Enriquez
5106 W. 69th Loop
Westminster, CO 80030